**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**EARL A. RAMBARAN, THANKUMARIE**
**RAMBARAN, YOUDISTIR SEEBARRAN,**
**DEVANAND SUBRYAN, HOOVER CHAVEZ,**
**SUKWAR NANDLAL, HEMWATTIE**
**BRIJLALL,**

                    **Plaintiffs,**

**-vs-**                                                         **Case No.  6:08-cv-247-Orl-19GJK**

**PARK SQUARE ENTERPRISES, INC.,**
**d/b/a Park Square Homes,**

                    **Defendant.**
_____

# ORDER

This case comes before the Court on the following:

1.    Motion to Dismiss, Abstain from, or Stay Later Filed Federal ILSA Class Action in
      Favor of Preexisting State Court ILSA Class Action Brought by Same Named
      Plaintiffs by Defendant Park Square Enterprises, Inc., d/b/a Park Square Homes
      (Doc. No. 7, filed Mar. 12, 2008);

2.    Memorandum of Law in Opposition to Defendant's Motion to Dismiss, Abstain
      from, or Stay by Plaintiffs (Doc. No. 16, filed Apr. 21, 2008);

3.    Notice of Filing Court Documents to Be Judicially Noticed from Earlier Filed State
      Action by Defendant (Doc. No. 17, filed May 7, 2008);

4.    Notice of Filing Case Management Order–Class Certification Phase, in Earlier Filed
      State Action (Doc. No. 19, filed May 27, 2008); and

5.      Notice of Filing Amended Case Management Order–Class Certification Phase, and

Motion for Class Certification Filed July 7, 2008 in Earlier Filed State Action by

Defendant (Doc. No. 23, filed July 8, 2008).

**Background**

On January 7, 2008, Plaintiffs Earl A. Rambaran, Thankumarie Rambaran, Youdistir

Seebarran, and Devanand Subryan filed a putative class action in the Complex Business Litigation

Court of Florida's Ninth Judicial Circuit, case number 48-2008-CA-302-O, against Defendant Park

Square Enterprises, Inc., doing business as Park Square Homes, alleging violations of the Interstate

Land Sales Full Disclosure Act ("ILSA"), 15 U.S.C. §§ 1701-20 (2006).  (Doc. No. 7-2 at 6-24.)

A little over a month later, on February 19, 2008, the same Plaintiffs, with the addition of Hoover

Chavez, Sukwar Nandlal, and Hemwattie Brijlall, filed this federal lawsuit against the same

Defendant, alleging the same cause of action.  (Doc. No. 1.)  Defendant moves the Court to exercise

*Colorado River* abstention[1] and to dismiss or stay the case due to the earlier filed state court case.

(Doc. No. 7.)

**Standard of Review**

I.      **Motion to Dismiss**

Subject matter jurisdiction must be affirmatively shown in the record before considering the

merits of any case.  *E.g.*, *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th

Cir. 2005).  The party asserting federal subject matter jurisdiction bears the burden of proving its

existence.  *Id.*  In an ordinary civil action, the Federal Rules of Civil Procedure require a party to

---

[1]      *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983).

file "a short and plain statement of the grounds for the court's jurisdiction. . . ." Fed. R. Civ. P. 8(a)(1). If the complaint fails to conform to Federal Rule of Civil Procedure 8(a)(1), the defendant can move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1). *E.g.*, *Leisure v. Hogan*, 21 F. App'x 277, 278 (6th Cir. 2001); *Anderson v. United States*, 245 F. Supp. 2d 1217, 1221 (M.D. Fla. 2002).

Under Federal Rule of Civil Procedure 12(b)(1), a party may bring either a facial or a factual challenge to a court's subject matter jurisdiction. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990). In a facial challenge, a court assumes all of a plaintiff's allegations are true and determines whether a plaintiff has alleged a sufficient basis for subject matter jurisdiction. *Id.* at 1529. In a factual challenge, a court must determine if it has power to hear the case. *Id.* A court is not required to assume a plaintiff's allegations are true and is free to weigh the evidence and evaluate the merits of the jurisdictional claims. *Id.*

In factual challenges, as the Eleventh Circuit has explained, "matters outside the pleadings, such as testimony and affidavits, are considered." *Lawrence*, 919 F.2d at 1529 (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)). However, when a factual attack also implicates an element of the cause of action, jurisdictional dismissals should be allowed "only in those cases where the federal claim is clearly immaterial or insubstantial." *Id.* (quoting *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981)). Federal claims "should not be dismissed on motion for lack of subject matter jurisdiction when that determination is intermeshed with the merits of the claim and when there is a dispute as to a material fact." *Id.* at 1531.

For the purposes of a motion to dismiss for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6), a court must view the allegations of the

complaint in the light most favorable to the plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences drawn from such pleading.  *E.g.*, *Jackson v. Okaloosa County*, 21 F.3d 1531, 1534 (11th Cir. 1994); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (abrogated on other grounds).  Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations of the complaint.  *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1969 (2007).

## II.     Motion to Stay

A court's power to stay proceedings is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  Trial courts are afforded "broad discretion in determining whether to stay or dismiss litigation in order to avoid duplicating a proceeding already pending in another federal court."  *I.A. Durbin, Inc. v. Jefferson Nat'l Bank*, 793 F.2d 1541, 1551-52 (11th Cir. 1986).  Circuit Courts of Appeal review a district court's decision whether to stay proceedings under an abuse of discretion standard.  *CTI-Container Leasing Corp. v. Uiterwyk Corp.*, 685 F.2d 1284, 1288 (11th Cir. 1982).  Once a stay is imposed, a court has discretion to lift the stay "if the circumstances that persuaded the court to impose the stay in the first place have changed significantly."  *Canady v. Erbe Elektromedizin GmbH*, 271 F. Supp. 2d 64, 75 (D.D.C. 2002).

## Analysis

## I.     *Colorado River* Abstention Doctrine

In *Colorado River*, the Supreme Court stressed the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them" but nevertheless found that under

"exceptional" circumstances the need for "wise judicial administration" allows a federal court to abstain in favor of a concurrent state court action. *Colo. River*, 424 U.S. at 817-18. As a threshold matter, *Colorado River* analysis is applicable "when federal and state proceedings involve substantially the same parties and substantially the same issues." *Ambrosia Coal & Constr. Co. v. Pages Morales*, 368 F.3d 1320, 1330 (11th Cir. 2004). Once this threshold is met, the Eleventh Circuit Court of Appeals has recognized six factors "that must be weighed in analyzing the permissibility of [*Colorado River*] abstention." *Id.* at 1331. These six factors are as follows:

> (1) whether one of the courts has assumed jurisdiction over property, (2) the inconvenience of the federal forum, (3) the potential for piecemeal litigation, (4) the order in which the fora obtained jurisdiction, (5) whether state or federal law will be applied, and (6) the adequacy of the state court to protect the parties' rights.

*Id.* In addition, two policy matters also warrant consideration in *Colorado River* analysis: (1) whether the later filed litigation is vexatious or reactive in nature, and (2) whether the concurrent cases involve a federal statute that evinces a policy favoring abstention. *Id.*

With regard to weighing these considerations, the Supreme Court explained that "[n]o one factor is necessarily determinative," *id.* at 1331-32 (quoting *Colo. River*, 424 U.S. at 818), and that "[t]he weight to be given to any one factor may vary greatly from case to case," *id.* at 1332 (quoting *Moses H. Cone*, 460 U.S. at 16). "Furthermore, the factors must be considered flexibly and pragmatically, not as a 'mechanical checklist.'" *Id.* (quoting *Moses H. Cone*, 460 U.S. at 16). "Finally, the abstention inquiry must be 'heavily weighted in favor of the exercise of jurisdiction.'" *Id.* (quoting *Moses H. Cone*, 460 U.S. at 16).

II.     *Colorado River* **Analysis**

A.     **Threshold Finding**

In the instant case, *Colorado River* analysis is clearly appropriate.  The federal case involves the same Defendant and four of the same Named Plaintiffs as the state case.  (*Compare* Doc. No. 1 at 1 *with* Doc. No. 7-2 at 6.)   Both cases are putative class actions, and Plaintiffs define the relevant class identically in the two Complaints. (*Compare* Doc. No. 1 at 14-15, ¶¶ 53-58 *with* Doc. No. 7-2 at 12-13, ¶¶ 35-40.)  Both cases assert a single cause of action, violation of ILSA, and include virtually identical substantive allegations.  (*Compare* Doc. No. 1 at 15-20, ¶¶ 59-89 *with* Doc. No. 7-2 at 20-24, ¶¶ 50-76.)   The two cases involve "substantially the same parties" and identical issues; therefore, they are parallel proceedings subject to *Colorado River* analysis.

B.     **Six Factors**

1.     **Jurisdiction Over Property**

The first *Colorado River* factor considers whether one of the courts has assumed jurisdiction over the property at issue.  In making this determination, a federal court "looks not to the location of the res, but the jurisdiction of the court." *Ambrosia Coal*, 368 F.3d at 1332.  Where the relevant cases are not proceeding *in rem*, neither court has assumed jurisdiction over the property.  *Id.*

Concerning this first factor, Defendant asserts that a Florida court has already assumed jurisdiction over some of the property at issue. (Doc. No. 7 at 17-19.) As Defendant explains, the Orange County Circuit Court has assumed jurisdiction over most of the Named Plaintiffs' real property in separate mortgage foreclosure actions in which these Plaintiffs raise ILSA affirmative defenses. (*Id.* at 17-18.)  According to Defendant:

> Notably, these foreclosures are different from the Earlier State Action which is the
> parallel state case to which Colorado River analysis is being applied, but the

mortgage foreclosure actions are still relevant and their pendency supports the issuance of a stay in this Later Federal Action.  The statutory rescission of deed remedy which the Named Plaintiffs and Additional Federal Named Plaintiffs have sought is also equitable in nature, and such actions (even if based on *in personam* jurisdiction, rather than *in rem*) are customarily brought in the state court of the county where the real property is situated.

(*Id.* at 18 (emphasis removed).)  Plaintiff counters, "The fallacy of this argument is that these proceedings do not affect the ILSA claims in any substantial way."  (Doc. No. 16 at 5.)  Plaintiff explains, "At most, a foreclosure proceeding would affect the available remedies to some of the plaintiffs whose land was lost to the bank.  Those plaintiffs could not deliver the property back to the developer and would, as a result, be limited to a claim for damages."  (*Id.*)

While the possibility of inconsistent dispositions of real property is troubling, the *parallel state court proceeding* has not assumed jurisdiction over the property at issue.  Rather, the foreclosure actions are different cases entirely.  Since the Court must look to the assumption of jurisdiction by the federal and state courts in the parallel proceedings, *Ambrosia Coal*, 368 F.3d at 1332, and neither the instant case nor the parallel state case is *in rem*, the first factor is neutral and does not weigh in favor of abstention.

### 2.     Inconvenience of the Federal Forum

Next, the Court must consider the inconvenience of the federal forum.  According to the Eleventh Circuit, "[t]his factor should focus primarily on the physical proximity of the federal forum to the evidence and witnesses . . . ."  *Id.*  When the federal and state courts are located in the same geographical area, courts routinely deem this factor to be neutral.  *E.g.*, *O'Dell v. Doychak*, No. 6:06-cv-677-Orl-19KRS, 2006 WL 4509634, at *7 (M.D. Fla. Oct. 20, 2006); *Bosdorf v. Beach*, 79 F. Supp. 2d 1337, 1344 (S.D. Fla. 1999).  Such is the case here, where both the federal and state

courts are located in Orlando.  As recognized by both parties, this factor is neutral.  (Doc. No. 7 at 19; Doc. No. 16 at 6.)

### 3.     Avoidance of Piecemeal Litigation

The third *Colorado River* factor considers the potential for piecemeal litigation.  The Eleventh Circuit has taken an extremely cautious position on this factor, emphasizing that it "does not favor abstention unless the circumstances enveloping those cases will likely lead to piecemeal litigation that is abnormally excessive or deleterious." *Ambrosia Coal*, 368 F.3d at 1333.   The Eleventh Circuit explained that this factor favored abstention in *Colorado River* because, in that case, "the Federal Government sued 'some 1,000 water users,' seeking a declaration of the Government's rights to waters in certain rivers and their tributaries." *Id.* (citing *Colo. River*, 424 U.S. at 805).  Due to the size of the parallel proceedings in *Colorado River*, piecemeal litigation would have been abnormally excessive. *Id.*

District Courts in the Eleventh Circuit have more specifically identified exceptional circumstances in which the third factor favors abstention.  When identical litigation is filed in both the federal and state courts, for example, courts have found that duplicative proceedings would be unduly excessive. *E.g.*, *Sides v. Simmons*, No. 07-cv-80347, 2007 WL 3344405, at *3 (S.D. Fla. Nov. 7, 2007) ("To allow litigation in this Court, while the same litigation is pending in state court, will require twice the resources: two discoveries, two trials[,] and possibly two conflicting decisions based on the same evidence. . . .  This is unnecessary and excessive." (internal citation omitted)); *Leaderstat, LLC v. Abisellan*, No. 8:06-cv-1337-T-23TGW, __ F. Supp. 2d __, 2007 WL 5433486, at *3 (M.D. Fla. Jan. 24, 2007) ("Because the plaintiff seeks to force the defendant to defend two identical lawsuits in two different forums at unnecessary inconvenience and expense, a distinct

danger of oppressively duplicative, piecemeal litigation exists. The third factor weighs strongly in favor of a stay."); *Bosdorf*, 79 F. Supp. 2d at 1344 ("Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results. . . . The facts and claims underlying the state and federal actions in the instant case are identical. . . . Thus, if this Court declines to abstain, there exists a strong likelihood that it will duplicate the efforts of the state court, potentially reaching a different conclusion on identical facts." (internal citations omitted)); *see also O'Dell*, 2006 WL 4509634, at *7 ("The potential for state court litigation to moot a federal case favors abstention.").

Both the federal and state court cases are putative class actions.  (Doc No. 1; Doc. No. 7-2 at 6-24.)  According to the allegations in Plaintiffs' federal Complaint, there are approximately 250 people in the proposed class.  (Doc. No. 1 at 8-9, ¶¶ 36-37.)  The fact that this case is a potential class action involving perhaps hundreds of class members raises serious concerns over abnormally excessive piecemeal litigation.  *See Colo. River*, 424 U.S. at 820 (noting the danger of piecemeal litigation in a case involving approximately 1,000 claims); *Romine v. Compuserve Corp.*, 160 F.3d 337, 341 (6th Cir. 1998) ("Moreover, the specter of judicial duplication of effort looms particularly ominously in the class action context, where the potential for inefficiency is acute.").  Furthermore, the substantive claims in the two cases are almost exactly the same.  (*Compare* Doc. No. 1 at 15-20, ¶¶ 59-89 *with* Doc. No. 7-2 at 20-24, ¶¶ 50-76.)  Plaintiffs have hauled Defendant into two different courts for identical lawsuits.  This causes "unnecessary inconvenience and expense" and raises "a distinct danger of oppressively duplicative, piecemeal litigation."  *Leaderstat, LLC*, 2007 WL 5433486, at *3.  As explained by the Seventh Circuit Court of Appeals:

> When a case proceeds on parallel tracks in state and federal court, the threat to efficient adjudication is self-evident.  But judicial economy is not the only value that

is placed in jeopardy.  The legitimacy of the court system in the eyes of the public and fairness to the individual litigants also are endangered by duplicative suits that are the product of gamesmanship or that result in conflicting adjudications.

*Lumen Constr., Inc. v. Brant Constr. Co., Inc.*, 780 F.2d 691, 694 (7th Cir. 1985); *see also id.* at n.4.

Thus, in this case, the third factor strongly favors abstention.

### 4.        Order in Which the Courts Assumed Jurisdiction

Under the fourth *Colorado River* factor, this Court must consider the order in which the fora obtained jurisdiction.  This factor "should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Ambrosia Coal*, 368 F.3d at 1333 (quoting *Moses H. Cone*, 460 U.S. at 21).  When analyzing this factor, courts should consider its underlying policies: the avoidance of forum shopping and the problem of collateral estoppel.  As one trial court in the Southern District of Florida explained:

> Moreover, to permit both state and federal suits to go forward would lead to forum shopping by encouraging Plaintiff to simply choose a second court if he becomes unhappy with the first.  Deferring jurisdiction to the court where the case was first filed protects the neutrality of the federal system and is consistent with long-standing judicial notions of issue and claim preclusion. . . .  It would be illogical to give full faith and credit to the judgments of other courts while encouraging a race to judgment by permitting two suits involving substantially the same parties and issues to go forward.

*Sides*, 2007 WL 3344405, at *4.  Another trial court in the Southern District similarly noted:

> Furthermore, because Plaintiffs' federal and state actions are identical, an earlier decision in one court will likely bind the parties in the other under preclusion principles.  This raises two problems. First, a party may try to accelerate or stall proceedings in one of the forums to ensure the more "favorable forum" rules first on an issue. . . .  Second, the possibility exists that either forum will enter a ruling unaware that the other forum already ruled.  In such a case, the forum that loses the race will have engaged in an "unseemly and grand waste of efforts."

*Bosdorf*, 79 F. Supp. 2d at 1344 n.14 (internal citations omitted).  Finally, when there are additional claims raised in the state court case, abstention is particularly appropriate because the state court

-10-

case is more comprehensive, and the state court "can determine at one time all of the claims arising from [the] same set of facts." *Paolino v. McClain*, No. 4:06-cv-25, 2006 WL 2025063, at *4 (S.D. Ga. July 17, 2006).

There have been very few substantive filings in the instant case. Defendant has moved to dismiss the action (Doc. No. 7), and Plaintiffs have moved to certify the class (Doc. No. 22, filed July 7, 2008). Briefing on the class certification issue and filing of the Case Management Report have been stayed pending this Court's resolution of Defendant's Motion to Dismiss. (Doc. No. 25, filed July 14, 2008.) Defendant has not yet filed a responsive pleading, discovery has not yet commenced, and deadlines have not yet been set pursuant to a Case Management and Scheduling Order.

On the other hand, the Florida state court case was filed a little over a month before this federal case. (Doc. No. 1 at 20; Doc. No. 7-2 at 24.) Defendant has filed in the record of this case various filings from the state court case which include Defendant's Answer, Affirmative Defenses, and Counterclaim Against Named Plaintiffs for Declaratory Relief (Doc. Nos. 7-4, 7-5), the State Court's Notice of Hearing and Order on Case Management Conference (Doc. No. 7-3 at 2-3, 8-11), an Order on Defendant's Rule 1.220(d)(1) Motion to Bifurcate Discovery (Class Certification Issues Only) and Motion for Class Certification Scheduling Order (Doc. No. 17-2), the parties' Joint Case Management Report (Doc. No. 17-3), a Case Management Order–Class Certification Phase (Doc. No. 19-2), an Amended Case Management Order–Class Certification Phase (Doc. No. 23-2), and Plaintiffs' Motion for Class Certification (Doc. No. 23-3). The Court also takes judicial notice of the state court's docket sheet and observes that discovery concerning class certification appears to be well underway.

Thus, not only was the state case filed first, but the proceedings have also progressed significantly farther in the state case than in the instant case.  Additionally, Defendant has brought a claim for declaratory relief in the state case that it has not asserted in this case.  Because the state proceedings have advanced further than those in this case, and all claims may be litigated in the state case relating to Plaintiffs' ILSA allegations, the fourth factor weighs in favor of abstention.

### 5.      State or Federal Law Applicable

The next factor that the Court must consider is whether state or federal law will be applied. While the "involvement of federal law ordinarily weighs heavily in favor of the federal court exercising jurisdiction," as one district judge noted, "if federal and state courts have concurrent jurisdiction over a claim, the applicable law factor becomes less significant." *Bosdorf*, 79 F. Supp. 2d at 1345 (citing *Moses H. Cone*, 460 U.S. at 25-26).  In both this case and the state case, Plaintiffs bring a claim under ILSA.  (Doc. No. 1; Doc. No. 7-2 at 6-24.)  ILSA states that the district courts of the United States "shall have jurisdiction. . . *concurrent with State courts* . . . of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter." 15 U.S.C. § 1719 (emphasis added).  Here, since Congress has expressly provided for concurrent jurisdiction, the fifth factor does not weigh so heavily in favor of exercising federal jurisdiction.  *See Romine*, 160 F.3d at 342 ("In this case, the Ohio courts have concurrent jurisdiction over all the Plaintiff's federal securities law claims. The source-of-law factor thus has less significance here, especially in light of the fact that the Securities Act of 1933 not only provides that federal securities law actions under the 1933 Act may be brought in state courts, but also bars removal of such actions brought in state court.").

Moreover, as some courts have found, when a plaintiff first brings a federal action in state court, the preference for federal resolution of federal actions no longer exists. *See, e.g.*, *Sides*, 2007 WL 3344405, at *5 ("Since Plaintiff chose to first bring those claims in state court, this Court must honor that choice and let the state court adjudicate those claims."). Since Plaintiffs originally brought their ILSA action in state court, the fifth factor is neutral.

### 6.      Adequacy of the State Court to Protect the Parties' Rights

The sixth and final *Colorado River* factor considers the adequacy of the state court to protect the parties' rights. Generally, this factor "will only weigh in favor or against abstention when one of the fora is inadequate to protect a party's rights." *Ambrosia Coal*, 368 F.3d at 1334 (citing *Noonan South, Inc. v. County of Volusia*, 841 F.2d 380, 382 (11th Cir. 1988)). Thus, if both fora are adequate, this factor is neutral. When analyzing this final factor, courts tend to presume the adequacy of the state forum when the plaintiff initially chose to litigate in state court and then later sought to pursue the same action in federal court. *E.g.*, *Sides*, 2007 WL 3344405, at *5 ("since Plaintiff originally entrusted the state court to protect its federal right . . . this Court is confident that the state court will adequat[e]ly protect both parties['] rights"); *Bosdorf*, 79 F. Supp. 2d at 1346 ("Plaintiffs should normally be required to select one forum and stay there. The fact that Plaintiffs had access to federal court, but chose to proceed in state court initially, weighs in favor of abstention." (internal citation omitted)).

Plaintiffs argue that the state court is not adequate to protect the parties' rights because recent district court cases have reached conclusions inconsistent with the interpretation of the "100-lot exemption" in ILSA reached by Florida's Fourth District Court of Appeals. (Doc. No. 16 at 10-11.) Plaintiff believes that litigation over this issue in state court could result in costly appeals. (*Id.*) In

contrast, Defendant argues that the state court is an adequate forum for two reasons.  (Doc. No. 7 at 22-23.)  First, "Congress gave the state courts concurrent jurisdiction over ILSA claims, indicating that Congress believed state courts would adequately protect a plaintiff's rights."  (*Id.* at 22.)  Secondly, "[a] Westlaw search shows that Florida appellate courts have published opinions deciding more than twenty (20) cases involving ILSA claims.  The Florida Supreme Court itself decided the leading *Samara Dev. Corp. v. Marlow* case."  (*Id.* at 22-23.)

The Court finds that Defendant makes the better argument.  Congress has demonstrated its faith in the state courts' abilities to adjudicate ILSA claims by expressly providing for concurrent jurisdiction.  15 U.S.C. § 1719.  Particularly since Congress has prohibited removal of ILSA actions filed in state courts, as discussed in more detail in Section II.C, *infra*, there is a strong national policy evidencing confidence in the state courts' adequacy concerning ILSA cases.  Moreover, Plaintiffs themselves originally filed this action in state court, and Plaintiffs have not demonstrated any actual hindrance in presenting their arguments concerning the proper interpretation of ILSA to the state court.  Because both the federal and state courts would adequately protect the parties' rights, the sixth *Colorado River* factor is neutral.  *Ambrosia Coal*, 368 F.3d at 1334.

### C.    Additional Considerations

As previously explained, the Eleventh Circuit has recognized two additional considerations pertinent to the *Colorado River* analysis.  First, the Court should consider whether the later filed litigation is vexatious or reactive in nature.  *Ambrosia Coal*, 368 F.3d at 1331.  Neither party has addressed this consideration, and the record does not suggest that the later filed federal action is vexatious or reactive.  Therefore, this consideration is neutral.

Secondly, the Court should consider whether the concurrent cases involve a federal statute that evinces a policy favoring abstention. *Id.* The Eleventh Circuit noted that, in *Colorado River*, "[t]he single most important factor in the Supreme Court's decision to permit abstention was that the federal statute upon which the lawsuit revolved evinced a clear federal policy of avoiding the piecemeal adjudication of water rights in a river system." *Id.* at 1333. Similarly, courts have abstained from deciding cases where it appears that one party is seeking to circumvent federal removal policies and procedures. *E.g.*, *BIL Mgmt. Corp. v. N.J. Econ. Dev. Auth.*, No. 07-1077, 2008 WL 1813159, at *2 n.1 (3d Cir. Apr. 23, 2008); *Allied Mach. Serv., Inc. v. Caterpillar, Inc.*, 841 F. Supp. 406, 409-10 (S.D. Fla. 1993) (citing *Lorentzen v. Levolor Corp.*, 754 F. Supp. 987, 994 (S.D.N.Y. 1990)); *see also Lops v. Lops*, 140 F.3d 927, 947 (11th Cir. 1998) (Kravitch, J., dissenting).

The instant case was brought under ILSA which includes the following provision: "No case arising under this chapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States, except where the United States or any officer or employee of the United States in his official capacity is a party." 15 U.S.C. § 1719. Though this provision does not address piecemeal litigation, it does make clear that federal policy favors litigation of ILSA claims in state court when the ILSA action is first filed in state court. *Cf. Romine*, 160 F.3d at 342 (finding a similar aspect of the federal securities laws significant in affirming the district court's *Colorado River* abstention). This consideration therefore weighs in favor of abstention.

## III.   Appropriate Relief

Of the six *Colorado River* factors, four are neutral (factors one, two, five, and six) and two heavily favor abstention (factors three and four). Of the two additional considerations, one is neutral

and one favors abstention.  Given the serious risk of piecemeal litigation in this case, the danger of wasting judicial resources with duplicative proceedings, the Congressional policy concerning removal of ILSA actions, and the progress of the parallel state proceedings, the Court finds that exceptional circumstances exist warranting abstention in this case.

Defendant seeks dismissal of this action, or in the alternative, a stay.  In arguing for dismissal, Defendant asserts that the *Colorado River* doctrine is not really a doctrine of abstention; therefore, the general rule providing that a stay is the appropriate form of relief in cases of abstention, articulated by the Supreme Court in *Quackenbush v. Allstate Insurance Company*, 517 U.S. 706, 719-22 (1996), is inapplicable in this case.  (Doc. No. 7 at 23-25.)  As Plaintiffs correctly point out, however, such a conclusion does not comport with the case law.  (Doc. No. 16 at 11.)  In *Moorer v. Demopolis Waterworks and Sewer Board*, the Eleventh Circuit found that a district court erred in dismissing an action based on *Colorado River* rather than staying the case.  *Moorer*, 374 F.3d 994, 998 (11th Cir. 2004).  The Court there held, "We now join our sister circuits in holding that a stay, not a dismissal, is the proper procedural mechanism for a district court to employ when deferring to a parallel state-court proceeding under the *Colorado River* doctrine."  *Id.* (internal quotation marks and citations omitted).  Thus, the appropriate relief in this case is a stay rather than a dismissal.

## Conclusion

Based on the foregoing, the Motion to Dismiss, Abstain from, or Stay Later Filed Federal ILSA Class Action in Favor of Preexisting State Court ILSA Class Action Brought by Same Named Plaintiffs by Defendant (Doc. No. 7) is **GRANTED IN PART AND DENIED IN PART** as follows: the Motion to dismiss is **DENIED**, the Motion for abstention is **GRANTED**, and the

Motion to stay is **GRANTED**.  The case is **STAYED**, and the Clerk of the Court is directed to administratively close this case pending resolution of the state court action.  Plaintiffs' Motion for Class Certification (Doc. No. 22) is **DENIED WITHOUT PREJUDICE** to reassertion should this case be reopened. Plaintiffs shall submit a status report on the progress of the state court case within ninety (90) days from the date of this Order and every ninety (90) days thereafter.  Failure to make such reports may result in this case being dismissed without further notice from the Court.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on September 22, 2008.

**PATRICIA C. FAWSETT, JUDGE**
**UNITED STATES DISTRICT COURT**

Copies furnished to:
Counsel of Record